IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RQR DEVELOPMENT, LLC, a Montana Limited Liability Company,<br><br>        Plaintiff,<br><br> vs.<br><br>ATLANTIC CASUALTY INSURANCE COMPANY, a North Carolina Corporation,<br><br>        Defendant. | CV 14–118–M–DWM<br><br><br><br>ORDER<br>and OPINION |
| ATLANTIC CASUALTY INSURANCE COMPANY, a North Carolina Corporation,<br><br>        Counter Claimant,<br><br> vs.<br><br>RQR DEVELOPMENT, LLC, a Montana Limited Liability Company,<br><br>        Counter Defendant. | |

**INTRODUCTION**

Presently pending are cross motions for summary judgment. (Docs. 14, 20.)

Plaintiff RQR Development, LLC ("RQR Development") requests partial

-1-

summary judgment on the issue of whether Defendant Atlantic Casualty Insurance Company ("Atlantic") breached its duty to defend its insured, Mike Henning d/b/a Granite Mountain Excavating ("Granite Mountain"), in the underlying action. (Doc. 14 at 2.) RQR Development also seeks an entry of judgment awarding it the full amount of the judgment entered in the underlying action, post-judgment interest, costs, and attorneys' fees. (*Id*.) Atlantic filed a cross motion for summary judgment, admitting there are no factual disputes and seeking a judgment determination that the policy at issue does not provide coverage for the claims alleged by RQR Development in the underlying action. (Doc. 20 at 2.) Because there are no genuine disputes of material fact, these motions are appropriately resolved on summary judgment. For the reasons set forth below, judgment is granted in favor of Defendant and against Plaintiff.

## BACKGROUND

RQR Development is a Montana limited liability company formed in 2006 for the purpose of developing a residential subdivision in Florence, Montana known as Sapphire Ridge. (SUF, Doc. 16 at ¶ 1.) On November 23, 2009, RQR Development signed a contract with Blanchard and Weaver Development, LLC ("Blanchard & Weaver") for general contracting services. (*Id*. at ¶ 4.) Blanchard & Weaver, acting on behalf of RQR Development, then hired Mike Henning of

Granite Mountain to provide excavating services for roadway improvements within Sapphire Ridge. (*Id*. at ¶ 5.) According to the underlying complaint, Henning represented that he had the requisite knowledge, training, and experience to perform this job. (Doc. 16-3 at ¶ 15.) However, Granite Mountain's work resulted in delays and construction and engineering deficiencies, and RQR Development eventually hired another excavator to rectify Granite Mountain's work. (*Id*. at ¶ 17.) RQR Development incurred significant expenses in repairing Granite Mountain's deficient work. (*Id*. at ¶ 18.) On March 2, 2011, RQR Development sued Granite Mountain, Blanchard & Weaver, and another engineering firm, in the Fourth Judicial District Court, Missoula County, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, negligence, deceit, and constructive fraud ("the underlying action"). (*Id*. at ¶¶ 19–111.)

Granite Mountain had a commercial general liability insurance policy (Policy No. L110003279) with Atlantic in effect from November 23, 2009, to November 23, 2010 ("the Policy"). (Doc. 16 at ¶ 6; Policy, Doc. 16-2.) When Granite Mountain was served with RQR Development's complaint in the spring of 2011, it tendered the complaint to Atlantic for defense and indemnity. (Doc. 16 at ¶ 18; Tender Letter, Doc. 16-4.) On April 14, 2011, Atlantic determined there was

no coverage for the allegations in the complaint and declined to defend Granite Mountain. (Doc. 16 at ¶ 21; Declination Letter, Doc. 16-8.) On December 5, 2013, Granite Mountain executed a confession of judgment in favor of RQR Development, and on December 24, 2013, the district court entered a judgment against Granite Mountain in the amount of $326,114.00 with 10% interest running from December 5, 2013. (Doc. 16 at ¶ 24.) Granite Mountain then assigned its rights in the Policy to RQR Development, and this lawsuit followed. (*Id.* at ¶ 23.) RQR Development now alleges that Atlantic breached the terms of the Policy by failing to defend Granite Mountain in the underlying action and by failing to pay for the damages RQR Development sustained as a result of Granite Mountain's deficient work. (Compl., Doc. 1 at 7.)

## STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

**ANALYSIS**

## I.     Duty to Defend

RQR Development alleges that Atlantic had a duty to defend Granite

Mountain in the underlying action because its complaint alleged facts, which if

proven, would result in coverage.  (Br. in Support of Mot. for P.S.J., Doc. 15 at

12.)  RQR Development contends that "[i]f [Atlantic] believed that policy

exclusions . . . appl[ied], it was required to defend under a reservation of rights

and seek a determination of coverage through a separate declaratory judgment

action."  (*Id*. at 19.)  Atlantic responds that courts may not "ignore the clear

exclusionary language of insurance policies."  (Atlantic's Response, Doc. 19 at

15.)  Atlantic asserts it "reviewed the allegations in the complaint, ma[de] the

assumption that all facts alleged in the complaint were true, and denied coverage

based on the exclusions of the policy."  (*Id*. at 16.)  Atlantic appropriately

analyzed the exclusions and correctly concluded there is no coverage under the

Policy.

An insurer's "duty to defend arises when a complaint against an insured

alleges facts, which if proven, would result in coverage."  *Farmers Union Mut.*

*Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004).  "[I]f there is any dispute as to

the facts relevant to coverage, those factual disputes must be resolved in favor of

coverage," and "[u]nless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend." *Id.* at 386. The Montana Supreme Court has "repeatedly held that it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 800 (Mont. 2008).

"An insurer's duty to defend its insured is determined by the language of the insurance policy. If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005) (internal citations omitted). The Montana Supreme Court "has consistently held that where the language employed in an insurance contract is clear, the language controls, and the court must enforce it as written." *Id.* (internal quotation marks omitted). However, "the insurer has the burden of proving the applicability of an exclusionary clause," *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005), and "coverage exclusions [must] be narrowly construed," *Staples*, 90 P.3d at 385. In this case, Atlantic has shown that RQR Development's claims do not constitute "occurrences" as defined by the Policy, and the unambiguous exclusions in the Policy are applicable. There is no coverage for any of RQR Development's

claims, and, consequently, Atlantic had no duty to defend.

## A.     Negligence Claim

RQR Development alleged in its underlying complaint that Granite

Mountain "failed to comply with the standard of care reasonably to be anticipated

from the average excavator rendering such services under the same or similar

circumstances" and caused damage to its property as a result.  (Doc. 16-3 at

21–22.)  Atlantic asserts that the negligence claim does not constitute an

"occurrence" as defined by the Policy, (Doc. 19 at 4), and that the "your work"

exclusions "preclude coverage for damage to property as a result of the insured's

work," (*id.* at 21).  Atlantic's argument is correct.

### 1.     Occurrence

The Policy provides:

> We [Atlantic] will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury" or "property
> damage" to which this insurance applies.  We will have the right and
> duty to defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any "suit"
> seeking damages for "bodily injury" or "property damage" to which this
> insurance does not apply.

(Doc. 16-2 at 15.)  The insurance applies to "property damage" only if the

"property damage" is caused by an "occurrence."  (*Id.*)  The Policy defines

"occurrence" as "an accident."  (*Id.* at 27.)  The Policy does not define "accident,"

but the Montana Supreme Court has held that "where a policy defines an 'occurrence' as an 'accident,' '[g]enerally, the term 'accident' from the standpoint of the insured reasonably refers to any unexpected happening that occurs without intention or design on the part of the insured.'" *Landa v. Assurance Co. of Am.*, 307 P.3d 284, 288 (Mont. 2013) (quoting *Safeco Ins. Co. of Am. v. Liss*, 16 P.3d 399, 405 (Mont. 2000)). In determining whether something is an accident, the proper focus is on whether the insured's conduct was intended as opposed to whether the result of the conduct was intended. *Blair v. Mid-Continent Cas. Co.*, 167 P.3d 888, 891 (Mont. 2007).

Here, the underlying complaint alleged that the damages occurred as a result of Granite Mountain's failure to comply with the standard of care reasonably to be anticipated from the average excavator, not as a result of an accident. (*See* Doc. 16-3 at 21–22). Even if the resulting damages were not intended, Granite Mountain's conduct was not accidental where the excavation services were deliberately performed. Thus, RQR Development's negligence claim does not constitute an "occurrence" under the Policy. *See Lloyd A. Twite Fam. Partn. v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1160 (Mont. 2008) (no duty to defend triggered by the allegations in the complaint where plaintiffs alleged injuries occurred as a result of the design and construction of housing units and not as a

result of an accident).

In its reply brief, RQR Development relies on the Findings and Recommendation in *Thomas v. Nautilus Insurance Co.*, which states that "the term 'occurrence' would encompass injury or damage accidentally resulting from negligent conduct." 2011 WL 4369519, at *6 (D. Mont. Aug. 24, 2011), *adopted at* 2011 WL 4369496 (D. Mont. Sept. 19, 2011). RQR Development's reliance on *Thomas* is misguided, however, where that case involved the faulty workmanship of a subcontractor and stated that faulty workmanship may constitute an "occurrence" only "under certain circumstances." *Id.* No such circumstances are present here where there was faulty workmanship on the part of the insured and the complaint does not allege that Granite Mountain engaged in accidental conduct. *See Blair*, 167 P.3d at 891. Nevertheless, even if the negligence claim constituted an occurrence, the claim is excluded by the terms of the Policy.

## 2. Exclusions

As a preliminary matter, RQR Development claims the Montana Supreme Court's recent holding in *Tidyman's Management Services v. Davis*, 330 P.3d 1139 (Mont. 2014), means courts "need not analyze coverage under the policy to determine that [an insurer] breached its duty to defend." (Doc. 15 at 19.) RQR Development maintains that under *Tidyman's*, Atlantic waived its right to argue

for policy exclusions. This is an overstatement of the holding in *Tidyman's*. The insurer in *Tidyman's* acknowledged that its policy was implicated and provided a defense to its insured in a federal action. 330 P.3d at 1150. Then, in a related state court action, the insurer concluded that an exclusion precluded coverage and refused to defend its insured, even though it was aware that the policy was still potentially implicated. *Id.* In this context, the Court held that "[w]here the insurer itself recognized the complaint potentially implicated the Policy and required it to provide a defense, we can see no need for further analysis to conclude the duty to defend was invoked." *Id.* at 1151. Atlantic is correct in insisting that "*Tidyman's* rationale, insofar as it allows courts to ignore the clear exclusionary language of insurance policies, applies only to those cases in which the insurer has taken multiple actions to 'recognize' that there is potential coverage." (Doc. 19 at 15.) Here, Atlantic has not taken multiple actions to recognize potential coverage; instead, Atlantic declined coverage after tender of the claim and has not since changed its position.

RQR Development also argues in its reply brief that *Pacific Hide & Fur Depot v. Great American Insurance Company*, __ F. Supp. 2d __, 2014 WL 2159330 (D. Mont. May 23, 2014), requires any insurance company that wishes to deny coverage based on a policy exclusion to file a separate declaratory judgment

action after defending its insured under a reservation of rights. (RQR Development's Reply, Doc. 21 at 8–10.) The ruling in that case that the insurer breached its duty to defend, however, was based upon the court's determination that there was coverage under some of the policies at issue and "[c]overage under these policies renders any discussion of the additional policies superfluous, as coverage under even a single policy is sufficient to trigger Great American's duty to defend the entirety of [all the] claims." *Pac. Hide & Fur Depot*, 2014 WL 2159330, at *12. Additionally, the insurer's declination of coverage letter was "vague, general, and equivocal" and its decision to deny coverage was based on "'unilateral determinations' as to several questions of fact." *Id.* at *13. There, the insurer failed to demonstrate unequivocally that the claims were not covered before denying a defense. In contrast to the insurer there, Atlantic did not make any determinations of fact but rather assumed for purposes of determining coverage that all of RQR Development's allegations were true. (Doc. 19 at 16.) Further, Atlantic provided sufficient analysis of the applicable exclusions in its declination of coverage letter. (*See* Doc. 16-8.) Thus, *Pacific Hide & Fur Depot* is limited to its facts and should not be interpreted as changing the law in Montana

that insurers may rely on policy exclusions in denying coverage.[1]  *See e.g.*

*Beaverhead Co. v. Mont. Assn. of Cos. Joint Powers Ins. Auth.*, 335 P.3d 721, 725

(Mont. 2014) (finding an insurer did not have a duty to defend when it had

unequivocally demonstrated that a policy exclusion precluded coverage).

Finally, RQR Development relies on *Newman v. Scottsdale Insurance Co.*,

301 P.3d 348 (Mont. 2013), to further its argument that Atlantic breached its duty

to defend by relying on the exclusions in the Policy and has waived its right to

now argue for policy exclusions.  (Doc. 21 at 10–11.)  RQR Development's

reliance on *Newman*, however, is misplaced.  There, the Court determined that the

insurer waived its right to claim that the insured's lack of timely notice precluded

coverage.  *Newman*, 301 P.3d at 361.  Atlantic has made no such timely notice

argument in support of its decision to deny Granite Mountain a defense.  RQR

Development overlooks the *Newman* Court's discussion of the policy exclusions

and its conclusion that the insurer failed to unequivocally demonstrate exclusion

of the claims, *id*, which is the issue in this case.

Turning now to Atlantic's assertion that the exclusions in the Policy clearly

preclude coverage, exclusion (j), Damage to Property, provides,

---

[1] There is always a risk in making unilateral coverage decisions, but those risks are not at
issue in this case.

This insurance does not apply to: . . . . "[p]roperty damage" to:
. . . .
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Doc. 16-2 at 18.)  The phrase "your work" means "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." (*Id*. at 28.)  Exclusion (*l*), Damage to Your Work, excludes coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (*Id.* at 18.)[2]

The Policy excludes coverage for damage to property as a result of the insured's work and damage to the insured's work, including operations performed by the insured.  The underlying complaint alleged damages to RQR Development's property resulting from Granite Mountain's negligent acts and omissions "[w]hile rendering excavating and other services to RQR [Development]" on its property.  (Doc. 16-3 at 21.)  Thus, the negligence claim as

---

[2] After concessions made by RQR Development, Atlantic has conceded that exclusion (m), Damage to Impaired Property, does not apply, (Atlantic's Reply, Doc. 22 at 12), and that discussion of Endorsements AGL-077-1-08 and AGL-072-01-07 is moot, (*id.*).

pled on the face of the complaint comes within the "your work" exclusions, which preclude coverage.

In reviewing similar "your work" exclusions, the Montana Supreme Court found there was no "coverage for repair or replacement of the insured's own faulty work" and "agree[d] with the majority of jurisdictions which hold that this standard language found in the majority of comprehensive general liability coverage policies is unambiguous and all-inclusive." *Taylor-McDonnell Const. Co. v. Commercial Union Ins. Cos.*, 744 P.2d 892, 895 (Mont. 1987). *See also Haskins Const., Inc. v. Mid-Continent Cas. Co.*, 2011 WL 5325734, at *6 (D. Mont. Nov. 3, 2011) ("CGL policies are not intended to cover the faulty work of an insured").

Such "your work" exclusions are limited to excluding "coverage for property damage to the particular part of the property on which the defective work was performed." *Lukes v. Mid-Continent Cas. Co.*, 2013 WL 496203, at *3 (D. Mont. Feb. 11, 2013). The *Lukes* court cites to *Roaring Lion, LLC v. Nautilus Insurance Co.*, 2011 WL 3956132 (D. Mont. July 15, 2011), where the defective work was performed on the foundation of a home, which resulted in damage to the framing. 2013 WL 496203, at *3. Because the damage did not occur where the defective work was performed, the damage was not subject to the exclusion. *Id.*

Here, RQR Development alleged that Granite Mountain was negligent by:

a.   Erroneously disturbing substantial acreage on the project; and,
b.   Failing to adequately and safely cover high voltage, underground power cables; and,
c.   Erroneously scattering soil across the job site, burying top-soil in the fill slopes, and leaving soil too close to cut slope intersections; and,
d.   Misplacing a substantial volume of material on the job site; and,
e.   Failing to properly export certain material during the construction process; and,
f.   Wasting a substantial volume of material in the wildlife conservation corridor; and,
g.   Failing to properly install various culverts.

(Doc. 16-3 at 21–22.)  Each of RQR Development's allegations involves damage to the particular part of the property on which the defective work was performed. The damages occurred where Granite Mountain performed excavation operations on the property, so the exclusions apply.

RQR Development insists that because Granite Mountain "was hired for the limited purpose of providing excavation services to the roadway improvements in the subdivision," claims of collateral damage to other areas of the property where Granite Mountain was not hired to work are not subject to the exclusions.  (Doc. 21 at 19.)  But, RQR Development does not specify which allegations involve collateral damage as opposed to damage caused while Granite Mountain was working on the roadway.  In reviewing the complaint, four of the allegations

specifically cite the project, job site, and construction process.  The remaining allegations do not reference any portion of the subdivision other than the roadway job site and, reading them in the context of the claim as a whole, can only be interpreted to relate directly to the excavation work Granite Mountain performed on the roadway.

RQR Development also argues that exclusion (*l*) does not apply.  (Doc. 21 at 20–22.)  Exclusion (*l*) only applies to property damage that is "included in the 'products-completed operations hazard,'" which does not include "'property damage' arising out of: . . . [t]he existence of tools, uninstalled equipment or abandoned or unused materials."  (Doc. 16-2 at 18, 27.)  RQR Development argues that its allegations that Granite Mountain misplaced materials and earthwork are excepted from the exclusion.  However, the complaint alleged poor excavation that caused misplaced and unexported material; it did not allege that misplaced and unexported material itself caused damage.  Nevertheless, these allegations are excluded under exclusion (j) because the damages arose out of Granite Mountain's operations on the property and the property must allegedly be repaired as a result of Granite Mountain's incorrectly performed work.

Atlantic has shown that the "your work" exclusions preclude coverage.  It had no duty to defend Granite Mountain against RQR Development's negligence

claim.

**B.      Remaining Claims**

In its reply brief, RQR Development states that it "focuses only on its negligence claim and concedes that its remaining claims did not give rise to [Atlantic's] duty to defend." (Doc. 21 at 19.)  Therefore, RQR Development's remaining claims do not allege facts, which if proven, would result in coverage for Granite Mountain.  Moreover, each claim is either not an "occurrence" under the Policy or is unequivocally excluded by the Policy.

**1.      Breach of Contract**

RQR Development alleged in its underlying complaint that Granite Mountain "failed to perform its obligations" under the Excavating Subcontract in various ways, resulting in a breach of the contract and damage to RQR Development.  (Doc. 16-3 at 17–18.)  Atlantic asserts that RQR Development's breach of contract claim is expressly excluded from coverage under the Policy. (Doc. 19 at 17.)  In support of its assertion, Atlantic cites the Contractual Liability exclusion in the Policy: "This insurance does not apply to: . . . '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (Doc. 19 at 17 (citing Doc. 16-2 at 15–16).)  However, this exclusion is inapposite because it excludes

coverage for damages the insured is obligated to pay *by reason of the assumption of liability in a contract*; it does not exclude coverage for damages the insured is obligated to pay because of its own breach of a contract.[3] *See King Co. v. Travelers Ins. Co.*, 1996 WL 257135, at *4 (W.D. Wash. Feb. 20, 1996) ("It is well-established that exclusions of this type apply only to indemnity or hold harmless agreements; they do not exclude liability based on simple breach of contract.").

Regardless, any alleged breach of contract is likely not an "occurrence" under the Policy. The Policy covers bodily injury or property damage "caused by an 'occurrence,'" which is defined as an "accident." (Doc. 16-2 at 15, 27.) In *Burlington Insurance Co. v. Oceanic Design & Construction, Inc.*, the Ninth Circuit held that a breach of contract is not an accident, noting that "[a]llowing recovery for disputes between parties in a contractual relationship over the quality of work performed would convert [a] CGL policy into a professional liability

---

[3] Atlantic cites *Beaverhead County* in support of its proposition that the Policy excludes coverage for breach of contract claims. However, the CGL policy at issue in *Beaverhead County* contained an exclusion that applied directly to breach of contract claims: "[t]his policy does not insure against: [a]ny claim arising out of a claimed breach of contract or for breach of contract against the Insured." 335 P.3d at 721. The Court's analysis in *Beaverhead County* is inapplicable to this case because the Contractual Liability exclusion in the Policy is different than the one at issue in *Beaverhead County*. For this reason, it is also unnecessary to address Atlantic's argument that, under *Beaverhead County*, the Contractual Liability exclusion in the Policy also precludes negligence claims arising from the contractual duties of Granite Mountain, (Doc. 22 at 10–11).

policy or a performance bond." 383 F.3d 940, 949 (9th Cir. 2004). The Montana

Supreme Court has not directly addressed the issue of whether a breach of contract

is an "accident." In this case, the Montana Court would likely conclude that a

breach of contract is not an "accident" because the breaching party, Granite

Mountain, intended to perform the excavation work, even if it did not intend to

breach its contract with RQR Development by performing substandard work.

Granite Mountain's breach of contract is not an "accident," consequently it is not

covered by the Policy. *See Blair*, 167 P.3d at 891. Atlantic was not required to

defend Granite Mountain against RQR Development's breach of contract claim.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

RQR Development alleged in its underlying complaint that Mike Henning

d/b/a Granite Mountain breached the implied covenant of good faith and fair

dealing in his dealings with RQR Development by misrepresenting his

qualifications and acting outside the scope of accepted commercial practices.

(Doc. 16-3 at 18–19.) Atlantic asserts that coverage for the breach of the implied

covenant of good faith and fair dealing claim is excluded by the Contractual

Liability exclusion. (Doc. 19 at 18.) While Atlantic prevails on this claim, its

reliance on the Contractual Liability exclusion is unfounded.

A claim for breach of the implied covenant of good faith and fair dealing is an odd hybrid of a tort claim and a contract claim. The Montana Supreme Court discussed the history of this claim in *Story v. City of Bozeman* and ultimately decided that "a breach of the covenant is a breach of the contract." 791 P.2d 767, 775 (Mont. 1990), *overruled in part on other grounds by Arrowhead Sch. Dist. No. 75, Park Co. v. Klyap*, 79 P.3d 250, 264 (Mont. 2003). Because a claim for breach of the implied covenant is in essence a breach of contract claim, it is not an "accident" and is not an "occurrence" under the Policy. Thus, Atlantic had no duty to defend Granite Mountain against RQR Development's claim for breach of the implied covenant.

### 3. Negligent Misrepresentation

RQR Development alleged in its underlying complaint that Mike Henning d/b/a Granite Mountain made misrepresentations of fact "at and prior to the time that the Excavation Subcontract was entered into." (Doc. 16-3 at 19.) "Such affirmations and misrepresentations included . . . [the fact that Henning] was competent to fulfill his obligations under the Excavating Subcontract, and the fact that certain progress was made with respect to the construction work to justify his acceptance of proceeds." (*Id*. at 20.) Atlantic insists that "no coverage for negligent misrepresentation [exists] because a representation, in and of itself, is

not an occurrence" under the Policy. (Doc. 19 at 18.) Atlantic is once again correct.

The Policy covers bodily injury or property damage "caused by an 'occurrence,'" which is defined as an "accident." (Doc. 16-2 at 15, 27.) Mike Henning deliberately exaggerated his qualifications and experience, even if he did not intend the consequences of that exaggeration, and the complaint did not allege accidental conduct where it states that the representations were made with "intent and purpose," (Doc. 16-3 at 20). Accordingly, the misrepresentations were not an "accident." *See Blair*, 167 P.3d at 891; *see also Landa*, 307 P.3d at 288 (false representations made knowingly are not accidental conduct); *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) (negligent misrepresentation not an "accident").

### 4. Deceit and Constructive Fraud

In its underlying complaint, RQR Development made deceit and constructive fraud claims against Granite Mountain. (Doc. 16-3 at 22–23.) Atlantic insists that coverage for these claims is precluded by the "expected or intended" exclusion in the Policy. (Doc. 19 at 30–31.) Atlantic is correct.

The Policy provides, "This insurance does not apply to . . . 'bodily injury' or 'property damage' expected or intended from the standpoint of any insured."

(Doc. 16-2 at 15, 37).  Actual fraud requires the "intent to deceive," Mont. Code

Ann. § 28–2–405, so any allegation of fraud is an allegation that the consequence

was intended.  And constructive fraud involves "misleading another person to that

person's prejudice," Mont. Code Ann. § 28–2–406, implying at least an expected,

if not an intended, outcome.  In other words, RQR Development's allegations of

fraud and deceit are allegations that Granite Mountain intended or expected to

harm RQR Development.  This places RQR Development's claims squarely within

the "expected or intended" exclusion in the Policy.  Further, intentional acts are

not accidental and thus are not "occurrences" under the Policy.  *See Blair*, 167

P.3d at 891; *Landa*, 307 P.3d at 288 (fraud allegations do not allege covered

accidental conduct).  Moreover, "in Montana there is an unmistakable public

policy against insurance policies that provide an insured indemnification for . . .

his intentional acts." *Liss*, 16 P.3d at 405.  Atlantic did not have a duty to defend

Granite Mountain against RQR Development's deceit or constructive fraud claims.

Atlantic properly denied Granite Mountain a defense in the underlying action.[4]

---

[4] Additionally, RQR Development maintains that if this Court does not find coverage for Granite Mountain under the Policy, Atlantic has provided illusory insurance coverage.  (Doc. 21 at 33–34.)  But a CGL policy is not a professional liability policy. *Haskins*, 2011 WL 5325734, at *6.  RQR Development did not allege facts in its complaint against Granite Mountain that would result in coverage under the Policy, but the lack of coverage in this case does not mean coverage is illusory.  Atlantic properly assumed the facts in RQR Development's complaint were true, analyzed those facts in relation to the Policy and the exclusions, correctly concluded that coverage was not available for any of the claims under the clear language of the Policy, and

## II.     Entry of Judgment Award

In addition to summary judgment on the duty to defend issue, RQR Development seeks judgment awarding it the full amount of the state court judgment entered in the underlying action ($326,144.00); post-judgment interest; its defense costs in the underlying action; and attorneys' fees and costs incurred in this action.  (Doc. 14 at 2–3.)

"Montana case law clearly provides that where the insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Tidyman's*, 330 P.3d at 1149–50 (internal quotation marks omitted). In this case, Atlantic was not unjustified in its refusal to defend and is thus not liable for defense costs or the judgment entered in the underlying action.  Atlantic "concede[d] that in the event the Court finds a breach of the duty to defend, [Atlantic] is responsible for statutory interest from the date of the judgment through the date paid."  (Doc. 19 at 32.)  But Atlantic is not liable for post-judgment interest because it did not breach its duty to defend.  Finally, an award of attorneys' fees is discretionary as "[f]urther relief based on a declaratory judgment or decree."  Mont. Code Ann. § 27–8–313.  RQR Development is not entitled to "further relief" because it has not obtained declaratory judgment in its favor.

_____

denied Granite Mountain a defense with sufficient reasoning.

Accordingly, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. 14) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross Motion for Summary Judgment (Doc. 20) is GRANTED.

The Clerk of Court is directed to enter judgment and close this case.

DATED this 10th day of December, 2014.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT